**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN  DIVISION**

| | | |
|---|---|---|
| JOANN MCLAUGHLIN, on behalf of Plaintiff and the class members described herein,<br><br>Plaintiff,<br><br>v.<br><br>MAKWA, LLC doing business as MAKWA FINANCE; LDF HOLDINGS, LLC; JESSI LEE PHILLIPS LORENZO, also known as Jessi Phillips Lorenzo, formerly known as Jessi Lee Phillips, ZENRESOLVE, LLC; GRANITE ACQUISITIONS, LLC; and JOHN DOES 1-20,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:23-cv-03350<br><br>DEMAND FOR TRIAL BY JURY |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1.      Plaintiff, Joann McLaughlin, brings this action against Defendants (a) Makwa, LLC doing business as Makwa Finance ("Makwa"), (b) LDF Holdings, LLC, (c) Jessi Lee Phillips Lorenzo ("Lorenzo"), (d) ZenResolve, LLC, (e) Granite Acquisitions, LLC, and (f) John Does 1-20 to secure redress for usurious and illegal loans (such as Exhibit A) made to Illinois residents.

2.      Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Counts III), and damages under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (Count IV).

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (general federal

-1-

question), 15 U.S.C. § 1692k (FDCPA), 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1367 (supplemental jurisdiction). Jurisdiction may also exist under 28 U.S.C. § 1332(d) (Class Action Fairness Act).

4.     This Court has personal jurisdiction over Defendants because they:

a.     Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b.     Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

5.     Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6.     Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92

Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7.     Plaintiff Joann McLaughlin is a natural person who at all times relevant has resided in the Northern District of Illinois.

### Defendants

### LDF Holdings

8.     Defendant LDF Holdings, LLC ("LDF Holdings") is a limited liability company that claims to be wholly owned, indirectly, by the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "LDF Tribe"). Its website claims that "LDF Holdings owns and manages the entire online lending business." (https://ldf-holdings.com/about) (Exhibit B; Exhibit C) As set forth below, that is not true.

9.     The LDF Tribe is a small, isolated, and economically depressed Indian Tribe located in rural Wisconsin.

### Defendant Lorenzo

10.     At the time of the loan to Plaintiff, the president of LDF Holdings, LLC is Jessi Lee Phillips Lorenzo, also known as Jessi Phillips Lorenzo, f/k/a Jessi Lee Phillips ("Lorenzo").

11.     According to her LinkedIn profile (Exhibit D), as well as information posted on LDF Holdings' website (Exhibit B, p. 4), Lorenzo is the president of LDF Holdings, LLC despite not being a member of the LDF Tribe.

12.     As president, Lorenzo directed and controlled the lending activities, policies and practices  of LDF Holdings, LLC

13.     On information and belief, Lorenzo resides at 3303 West North B Street, Tampa, Florida 33609.

**Makwa, LLC doing business as Makwa Finance**

14.     Defendant Makwa, LLC doing business as Makwa Finance purports to be a limited liability company chartered under the Laws of the Lac Du Flambeau Band of Lake Superior Chippewa Indians. It conducts online lending at high interest rates, in excess of 600%. It does business via its website, https://www.makwafinance.com.

15.     Makwa, LLC doing business as Makwa Finance claims to be "an entity owned by a Federally Recognized Indian Tribe, Lac Du Flambeau Band of Lake Superior Chippewa Indians of Wisconsin." (Exhibit A, p. 1)

16.     In fact, as described below, the principal economic benefit of the activities of Makwa, LLC doing business as Makwa Finance is received by non-Native American persons.

**ZenResolve and Granite Acquisitions**

17.     Defendant ZenResolve, LLC is a limited liability company with principal offices at 2770 Mission Rancheria Rd., #315, Lakeport, CA 95453. It does business in Illinois.

18.     Defendant ZenResolve, LLC uses the mails and interstate wire communications to collect consumer debts allegedly owed to others.

19.     Defendant ZenResolve, LLC is a debt collector as defined by the FDCPA.

20.     Defendant Granite Acquisitions, LLC claims that it is a limited liability company purportedly organized under the laws of a Native American Tribe. Its offices are located at 2726 Mission Rancheria Road, Lakeport, CA 95453.

21.     On June 1, 2020, ZenResolve, LLC filed papers with the Secretary of State of Wyoming stating that it had merged into Granite Acquisitions, LLC, with Granite Acquisitions, LLC being the surviving company. (Exhibit E).

22.     As set forth below, subsequent to June 1, 2020, collection activities have continued to be conducted in the name of ZenResolve, LLC without reference to the merger.

23.     Furthermore, ZenResolve, LLC continues to be listed by the Corporation Commission of the State of Arizona as an active LLC under that name. (Exhibit F).

24. ZenResolve, LLC claims to operate under the laws of the "Big Valley Band of Pomo Indians of the Big Valley Rancheria."

25. ZenResolve regularly collects debts for many alleged "tribal" lenders, including Little Lake, Target Finance, Lendumo and Minto Money. *Fultz v. ZenResolve LLC*, 5:21-cv-2202, 2022 U.S. Dist. LEXIS 42125 (N.D. Ohio Mar. 9, 2022).

**John Does 1-20**

26. Defendants John Does 1-20 are other persons and entities that participated in the lending activities described herein.

**GENESIS AND NATURE OF LENDING SCHEME**

27. An article published in the LDF Tribe's newsletter, *Inwewin*, in July 2013 noted that the tribe had embarked on a new internet lending business. The article stated that "some view payday loan and internet lending businesses as predatory, with companies taking advantage of individuals already in unpleasant financial situations." The article also stated that "the Tribe has partnered with one of the largest and most experienced lending companies." (Exhibit G)

28. Lacking both capital and experience, and in desperate need of money, the tribe attempted to rent out one of its few remaining assets – its sovereign immunity – to non-tribal persons and entities who agreed to pay the LDF Tribe a small percentage of each loan as a fee or commission.

29. Within a short period of time, the LDF Tribe became one of the most prolific suppliers in the rental market for sovereign immunity, making "rent-a-tribe" agreements with over 50 different non-tribal investors.

30. The LDF Tribe received between one and three percent of revenues from each of these lenders in exchange for the use of its name.

31. Loan approval was made by the non-tribal owners of each lender. Electronic documents were transmitted to a representative on LDF tribal soil in Wisconsin, who rubber-stamped approval for the loan while technically on the LDF Tribe's reservation. The loans

are then funded from bank accounts to which the tribe has no access, and the loans are serviced and collected by nontribal entities off the LDF Tribe's reservation.

32. Brent McFarland, then the LDF Tribe's director of business development, told the Milwaukee Journal Sentinel that "we're looking for ways to leverage (the tribe's) sovereignty" for profit. Cary Spivak, "Lac du Flambeau Cheppewa enter payday loan business with eye to online gambling," Milwaukee Journal Sentinel, Dec. 29, 2013, http://archive.jsonline.com/business/lac-du-flambeau-chippewa-enter-payday-loan-business-with-eye-to-online-gambling-b99164952zl-237906421.html. (Exhibit H)

33. The Tribe thereafter entered into "rent a tribe" arrangements with dozens of non-tribal entities.

34. The role of LDF Holdings is to make it a appear that the lending business was "tribally" owned, in exchange for about 2% of the revenues from the loans.

35. Makwa, LLC doing business as Makwa Finance makes loans through its website (Exhibit I) to consumers at interest rates in excess of 600% annually.

36. Makwa, LLC doing business as Makwa Finance does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

37. Many of the loans made by Makwa, LLC doing business as Makwa Finance are made to Illinois residents, including Joann McLaughlin.

38. These residents have received funds via ACH transfers into bank accounts located in Illinois. The loans also provide for repayment via ACH transfers.

39. At the time of the loans at issue, Makwa, LLC doing business as Makwa Finance's website specified a list of states in which it made loans including Illinois. It has since been changed (Exhibit I) to exclude Illinois.

40. Makwa, LLC doing business as Makwa Finance – and the Defendants actually conducting the lending operation – thus affirmatively sought out and targeted Illinois residents for such loans.

-6-

41.     The funds lent are transferred by ACH credit to the borrowers' bank accounts in Illinois.

42.     Repayment of the loans is made by ACH debit from the borrowers' bank accounts in Illinois.

## LOAN TO PLAINTIFF

43.     On or about March 24, 2020, Makwa, LLC made a loan to Plaintiff (Exhibit A) for $825. The loan would result in repayment of $3,388.80 if paid every 15 days for 6 months. The total interest charged would be $2,563.80, which according to Makwa, LLC equates to an annual percentage rate of 686.79%.

44.     The loan agreement (Exhibit A) is a standard form.

45.     The loan was made for personal purposes and not for business purposes.

46.     The principal amount was transferred to Plaintiff's bank account in Illinois via ACH.

47.     The loan was made entirely via the Internet.

48.     The loan was to be repaid via ACH.

49.     Plaintiff made some of the payments, including interest.

50.     Makwa continues to attempt to collect the balance.

51.     Makwa is having ZenResolve dun Plaintiff.

52.     Makwa's lending does not actually occur on the Tribe's reservation.

53.     A significant majority of the transaction occurs within the State of Illinois – applying for the loan and receiving and collecting the funds.

54.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California

constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

55.     Plaintiff has never set foot on the LDF Tribe's land.

56.     Loans to Illinois residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Illinois.

## ILLINOIS REGULATION OF LENDING

57.     At the time of the loan to Plaintiff, and continuing to present, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

58.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

59.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

60.     Illinois has a criminal usury statute that defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of

another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

61.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

62.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569, *In the Matter of Money Mutual, LLC*, No. 12 CC 408, *In the Matter of Hammock Credit Services*, No. 12 CC 581, *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

## INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

63.     In an attempt to evade prosecution under usury laws of states like Illinois, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

64.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

65.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to

have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

66.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

67.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

68.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

69.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.,* No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote,* 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

70.     Plaintiff incorporates paragraphs 1-69.

71.     This claim is against all Defendants.

72.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff and the class members must repay the loans made to them.

73.     Declaratory relief will resolve such controversy.

74.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

75.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

76.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Makwa, LLC doing business as Makwa Finance at more than 9% interest (c) which loan has not been paid in full.

77.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

78.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

79.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

80.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

81.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

82.     Defendants have acted on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate.

83.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.       Injunctive relief;

ii.      Declaratory relief;

iii.     Restitution of all amounts collected on the loans from members of the class;

iv.      Costs of suit; and

v.       Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

84.     Plaintiff incorporates paragraphs 1-69.

85.     This claim is against Makwa, LLC doing business as Makwa Finance, LDF Holdings, LLC, and Jessi Lee Phillips Lorenzo.

86.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

87.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

88.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

89.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Makwa, LLC doing business as Makwa Finance at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

90. Plaintiff may alter the class definition to conform to developments in the case and discovery.

91. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

92. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

93. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

94. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

95. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Damages as provided in 815 ILCS 205/6.

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other and further relief as the Court deems proper.

## COUNT III – RICO

96. Plaintiff incorporates paragraphs 1-69.

97. This claim is against Lorenzo, who is the RICO "person."

98. All loans made in the name of Makwa, LLC doing business as Makwa Finance, to

Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

99.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

100.    Makwa, LLC doing business as Makwa Finance is an enterprise affecting interstate commerce, in that it is a legal entity located outside of Illinois and makes loans to Illinois residents via the Internet.

101.    Lorenzo was associated with Makwa, LLC doing business as Makwa Finance.

102.    Lorenzo conducted or participated in the conduct of the affairs of each enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

103.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

104.    Plaintiff brings this claim on behalf of a class.

105.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Makwa, LLC doing business as Makwa Finance at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

106.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

107.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

108.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether the loans at issue are "unlawful debts" as defined in RICO.

b. Whether Makwa, LLC doing business as Makwa Finance is an "enterprise."

c. Whether Lorenzo was associated with Makwa, LLC doing business as Makwa Finance.

d. Whether Lorenzo conducted or participated in the affairs of Makwa, LLC doing business as Makwa Finance through a pattern of making and collecting unlawful loans.

109. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

110. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

111. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Lorenzo for:

i. Treble damages;

ii. Attorney's fees, litigation expenses and costs of suit; and

iii. Such other or further relief as the Court deems proper.

## COUNT IV – FDCPA – INDIVIDUAL CLAIM

112. Plaintiff incorporates paragraphs 1-69.

113. This claim is against ZenResolve and Granite.

114. Makwa is having ZenResolve dun Plaintiff.

115. Exhibit J is an email which ZenResolve sent Plaintiff on April 5, 2023.

116. Plaintiff received the email and was sufficiently concerned about it to consult an attorney.

-15-

117.     Plaintiff alleges that Defendants knowingly attempted to collect a usurious and illegal high-interest consumer loan, declared void by Illinois law, from Plaintiff.

118.     Defendants were aware of the legal prohibitions against such loans as a result of prior lawsuits involving the same type of loans at issue here, *Rachelson v. Zenresolve, LLC*, 1:20-cv-02178 (N.D.Ill.); *Rachelson v. Zenresolve, LLC*, 21 CH 561 (Circuit Court of Cook County); *Tonia Long v. Zenresolve, LLC*, 22 CH 08836 (Circuit Court of Cook County).

119.     The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information.15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

120.     In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

121.     Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

122.     The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

123.     Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. § 1692 *et seq.*

124.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by engaging in the conduct set forth above.

125.     Defendants Granite Acquisitions, LLC and ZenResolve, LLC are responsible for

acts conducted in the name of the other, as a result of the June 1, 2020 merger.

126.    Section 1692e provides:

**False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)     The false representation of–**

**(A)     the character, amount, or legal status of any debt; . . .**

**(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

127.    By representing that loans declared by Illinois law to be "null and void" were in fact outstanding balances, and offering settlements of such purported obligations, Defendants engaged in materially deceptive and misleading collection communications. Defendants also failed to disclose material facts necessary to make the statements made not misleading, all in violation of § 1692e.

128.    Section 1692f provides:

**§ 1692f.     Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

129.    Under § 1692f(1), "A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (B) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if

-17-

either (A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, Statements of General Policy or Interpretation, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988).

130.     The collection or attempted collection of usurious interest violates § 1692f(1). *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 408 (3rd Cir. 2000) ("[D]efendants presumably have violated section 1692f(1) regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims"); *Patzka v. Viterbo College*, 917 F.Supp. 654, 658 (W.D. Wisc. 1996); *Martinez v. Albuquerque Collection Services, Inc.*, 867 F. Supp. 1495, 1509 (D.N.M. 1994) (granting partial summary judgment to plaintiff, holding that debt-collector defendant falsely represented plaintiff's debt in violation of the FDCPA, by demanding compound interest that the creditor was not allowed to collect under state law).

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants for:

        i.      Statutory damages;

        ii.     Actual damages;

        iii.    Attorneys' fees, litigation expenses and costs of suit; and

        iv.    Such other and further relief as the Court deems proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Dulijaza (Julie) Clark
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824

(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>*/s/ Daniel A. Edelman*</u>
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman